IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SEAN TATE,

                        Plaintiff,

    v.
                                                    OPINION and ORDER

KEVIN CARR, ANGELA HANSON,
KELLI R. WILLARD-WEST, LIZZIE TEGELS,               20-cv-302-jdp
TAMMY WALDERA, MS. MEIDAM, T. KUCHINSKI,
and MS. LUECK,

                        Defendants.

---

      Plaintiff Sean Tate, appearing pro se, is a prisoner at Oakhill Correctional Institution, in Oregon, Wisconsin. Tate alleges that prison officials have forced him to participate in actuarial risk assessments that violate his religious beliefs, and that they placed false negative information in the assessment results that harmed his ability to be paroled or to obtain a lower security status in prison. Several matters are before the court.

**A. Motion to exclude witness**

      Tate alleges that participation in the Department of Corrections' "COMPAS" actuarial assessments violates his religious beliefs because as a practicing Muslim he is forbidden from participating in "anything that claims it can predict the future actions or events of a person, as these claims are based on magic, fortune-telling, and numerology." Dkt. 9 at 3. Tate filed an expert witness disclosure naming Nathaniel Hakim Crampton to support his claim that COMPAS constitutes forbidden fortune telling in Islam. Crampton is a community organizer and education advocate currently serving as a member of the Michigan Indigent Defense Commission. Crampton holds a "Ijaza or Certificate of Permission to Teach Islamic Principles

of Iman (Faith), Islam (Practice/Law), and Ihsan (Spiritual Virtue)" and has authored textbooks on "Islamic Scholarship." Dkt. 27 at 6.

Defendants have filed a motion to exclude Crampton's expert testimony. Dkt. 28. They point out technical defects with the expert disclosure: Tate does not include Crampton's list of publications from the last ten years, a list of the cases over the last four years in which Crampton testified as an expert at trial or by deposition, or a statement of the compensation that Crampton is receiving for his work on the case. *See* Fed. R. Civ. P. 26(a)(2)(B). I'll give Tate a short time to fix these omissions.

Defendants also object to Crampton's testimony on a more substantive basis: they say that Tate fails to show under Federal Rule of Evidence 702 that Crampton possesses enough knowledge of COMPAS to opine about whether it violates Tate's religious beliefs. And defendants argue that Crampton's testimony isn't reliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) because there is no evidence that his opinion is shared or accepted by others in his field or has been subjected to any kind of publication.

The court's gatekeeping function regarding expert testimony under Rule 702 essentially consists of a three-part test: the court must ensure (1) that the expert is qualified; (2) that the expert's opinions are based on reliable methods and reasoning; and (3) that expert's opinions will assist the jury in deciding a relevant issue. *Myers v. Ill. Cent. R. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The proponent of expert evidence bears the burden of establishing that the expert's testimony is admissible. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Other than their statement that Crampton hasn't provided the full disclosures necessary for his expert report, defendants do not appear to be challenging Crampton's qualifications

regarding Islam. It is not obvious why Crampton would have to show that he is qualified to opine about the inner workings of COMPAS, because Crampton isn't holding himself out to be an expert in COMPAS—he's a religious expert. Just as a proposed religious expert wouldn't need to be a biologist to opine that eating pork violates Islam, Crampton doesn't need to be an expert in COMPAS itself to opine about Islam's view of actuarial risk-assessment systems. Defendants argue that Crampton doesn't understand how COMPAS works and thus shouldn't be allowed to state that it "function[s] like divining arrows." Dkt. 27, at 5. But Crampton does state that COMPAS uses data from an offender's file and questionnaire answers to "make[] a probable guess or assumption predicting future behavior." *Id.* Defendants don't explain why this explanation is incorrect.

As for the reliability of Crampton's testimony, the *Daubert* test is flexible. Although *Daubert* identifies factors the court may consider when determining whether an expert's testimony is reliable—whether the expert's technique has been tested, subjected to peer review and publication, analyzed for known or potential error rate, or is generally accepted in the scientific community—the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Crampton's knowledge of Islam isn't scientific knowledge so it makes little sense to apply pure "peer review" or "error rate" factors to his proposed testimony, Nonetheless, defendants argue that Tate has provided no evidence that Crampton's opinions are shared by other Islamic experts, which may be a valid criticism of the proposed testimony. It's premature to hold a *Daubert* hearing to develop Crampton's testimony about his methodology; the parties have not yet filed summary judgment motions and the case may very well boil down to factual issues unrelated to the issue of what Islamic law permits. I will deny defendants' motion without

3

prejudice regarding their objections to the substance of Crampton's testimony, and they are free to raise those objections again at or after the summary judgment stage. But as stated above, I will grant the part of the motion in which defendants object to technical omissions with the expert disclosure.

## B. Motion for recruitment of counsel

Tate has filed a motion for the appointment of counsel to assist him with his case, stating that the litigation will be complex because it will require expert testimony, he "is not competent to represent himself," and defendants have not complied with his discovery requests. Dkt. 31. Litigants in civil cases do not have a constitutional right to counsel, and I do not have the authority to appoint counsel to represent a pro se plaintiff in a civil matter. Rather, I can only assist in recruiting counsel who may be willing to serve voluntarily. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc).

To show that it is appropriate for the court to recruit counsel, a plaintiff must first show that he is unable to afford counsel. The court has already allowed Tate to proceed in forma pauperis so he has met this requirement. A plaintiff must also show that he has made reasonable efforts to locate an attorney on his own. *See Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072–73 (7th Cir. 1992) ("the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). To meet this requirement, this court generally requires plaintiffs to submit letters from at least three attorneys to whom they have written and who have refused to take the case. Tate has submitted correspondence showing that he has contacted three lawyers who have turned hm down, so he has met this requirement.

4

This court will seek to recruit counsel for a pro se litigant only when the litigant demonstrates that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. The court must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

I am not convinced that this case is one requiring the assistance of counsel. Tate does not provide evidence showing that he is "incompetent" in a legal sense, meaning that he is incapable of understanding pertinent information or rationally evaluating litigation choices. I take him to mean that he is simply ill-equipped to prosecute his cases as a pro se litigant, but he has not shown that his abilities are below the hundreds of prisoners who bring civil rights cases in this court each year. Rather, Tate is an experienced pro se litigant and his filings so far in this case have been well prepared. It is also too early to tell whether the case is truly too complex for him to handle, and I've addressed issues regarding his proposed expert testimony above. He should not need a lawyer to supplement his expert disclosure. And if he believes that defendants are failing to comply with his discovery requests, he should file a motion to compel discovery as outlined in the court's preliminary pretrial conference order. *See* Dkt. 23, at 8–10.

I will deny Tate's motion without prejudice, which means that he can ask again if he continues to believe that he is unable to litigate the lawsuit. But if he files another request for appointment of counsel, he will have to explain what specific litigation tasks he cannot perform himself.

**C. Motion for leave to amend answer**

Defendants have filed a motion for leave to file an amended answer, Dkt. 34, along with a proposed amended answer adding a laches defense for two of the defendants regarding Tate's allegations stemming from a 2015 incident, Dkt. 35. Under Federal Rule of Civil Procedure 15(a)(2), the court should freely grant leave to amend when justice so requires. The court need not grant leave "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). Defendants say that they concluded that a laches defense would be appropriate after a lengthy investigation into the 2015 events. Their motion comes relatively early in the proceedings and Tate is not unduly prejudiced by the amendment. I will grant defendants' motion and I will accept their proposed amended answer.

**D. Motion for extension of dispositive motions deadline**

The parties have filed a joint motion to extend the dispositive motions deadline by a month because both sides continue to gather evidence and because defendants' counsel has a pressing workload around the time of the current deadline. There is room in the schedule to accommodate this extension so I will grant the motion; a new deadline is set in the order below.

ORDER

IT IS ORDERED that:

1. Defendants' motion to exclude expert testimony, Dkt. 28, is GRANTED in part. Plaintiff Sean Tate may have until November 15, 2021, to supplement his expert disclosure with information required under Federal Rule of Civil Procedure 26(a)(2)(B).

2. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 31, is DENIED without prejudice.

3. Defendants' motion for leave to file an amended answer, Dkt. 34, is GRANTED.

4. The parties' motion to extend the dispositive motions deadline, Dkt. 38, is GRANTED. The new deadline is November 29, 2021.

Entered October 26, 2021.

                          BY THE COURT:

                          /s/

                          _____
                          JAMES D. PETERSON
                          District Judge